IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00274-RBJ-MEH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LAURENCE R. GOODMAN,
COUNTY OF GILPIN, COLORADO,
COLORADO DEPARTMENT OF REVENUE,
PATRICK MAXWELL, and
JAN INGEBRIGSTEN,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court are the United States' Motion for Summary Judgment [filed January 25, 2012; docket #48], Defendant Laurence R. Goodman's Motion for Summary Judgment [filed February 13, 2012; docket #52] and the United States' Motion to Strike Untimely Motion [filed February 23, 2012; docket #57]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matters are referred to this Court for recommendation [docket #68]. The motions are fully briefed, and oral argument would not materially assist the Court in its adjudication of the motions. For the reasons that follow and based upon the entire record contained herein, the Court RECOMMENDS that the United States' motions be **granted** and that Goodman's motion be **stricken** or, alternatively, **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this

## UNITED STATES' MOTION FOR SUMMARY JUDGMENT

**I.  Findings of Fact**

The Court finds the following facts viewed in the light most favorable to Defendant Goodman, who is the non-moving party in this matter. The facts noted here constitute only those necessary for the Court's analysis of the arguments raised in the present motion.

1. On February 19, 2001 and May 10, 2004, a duly authorized delegate of the Internal Revenue Service ("IRS") made assessments against Defendant Laurence Goodman for the 1997, 1998, 1999 and 2000 tax years as follows:

| **Tax Type** | **Tax Period** | **Assessment Date(s)** | **Amount Assessed** |
|---|---|---|---|
| 1040 | 1997 | 02/19/2001 | $101,365.00 |
| 1040 | 1998 | 02/19/2001 | $71,820.00 |
| 1040 | 1999 | 05/10/2004 | $167,320.00 |
| 1040 | 2000 | 05/10/2004 | $121,890.00 |

(Declaration of Ginger Wray, January 24, 2012 ("Wray Declaration"), ¶4.)

2. The IRS initiated the deficiency determination process in 2000, culminating in the assessments of taxes for the years 1997 through 2000, set forth above in paragraph 1. (Wray

---

case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Declaration at ¶5.)

3.     The deficiency determination process was necessitated by the failure of Goodman to file returns for the 1997 through 2000 tax periods.  (*Id.*)

4.     Goodman has filed no income tax return for any period since 1997.  (*Id.*)

5.     As part of this process, IRS issued statutory notices of deficiency to Goodman with respect to the liabilities.  (*Id.* at ¶ 6.)

6.     On August 16, 2000, the IRS issued a notice of a deficiency in the amount of $101,365.00 for the tax year ended December 31, 1997.  (*See* docket #48-8).  The notice provides information as to how the deficiency was calculated and how to contest the determination of the deficiency.  (*Id.* at 2-3.)

7.     On August 16, 2000, the IRS issued a notice of a deficiency in the amount of $71,82000 for the tax year ended December 31, 1998.  (*See* docket #48-9).  The notice provides information as to how the deficiency was calculated and how to contest the determination of the deficiency.  (*Id.* at 2-3.)

8.     On October 17, 2003, the IRS issued a notice of a deficiency in the amount of $167,320.00 for the tax year ended December 31, 1999.  (*See* docket #48-10).  The notice provides information as to how the deficiency was calculated and how to contest the determination of the deficiency.  (*Id.* at 2-3.)

9.     On October 17, 2003, the IRS issued a notice of a deficiency in the amount of $121,890.00 for the tax year ended December 31, 2000.  (*See* docket #48-11).  The notice provides information as to how the deficiency was calculated and how to contest the determination of the deficiency.  (*Id.* at 2.)

10.     The notices, as well as other correspondence from the IRS to Goodman, were returned by Goodman (*see* dockets #48-12 through #48-14) along with correspondence indicating, in part, the following:

> The United States, all BAR Associations, every state of the union, every department of FEDERAL, STATE, COUNTY, CITY, ETC. including sheriff departments, judges, prosecutors, and all other municipal officers and persons, the internal revenue service, including state tax divisions and city income tax departments where they exists, all legal names signed on documents, are fictions, and I deny that they exist. The legal name LAURENCE R. GOODMAN used in the correspondence purportedly sent to me under the pretext by the non-existent IRS is not me.

(*See* docket #48-13 at 6).

11.     The IRS computed Goodman's federal income tax liability using Information Reporting Program Transcripts ("IRP Transcripts"), which are retrievable computer records that are maintained by the IRS reflecting data reported by third parties on various IRS forms, including Forms W-2 (employee wages), 1099 (non-employee compensation), and 1098 (home mortgage interest). (Wray Declaration, ¶ 7, docket #48-7.)

12.     IRP Transcripts are obtained for individuals by running searches under the individual's social security number in the computer file system maintained by the IRS. (*Id.*)

13.     IRS employees regularly rely on IRP Transcripts to carry out their official duties. (*Id.*)

14.     The IRS made Goodman's income tax assessments for 1997-2000, based upon information the IRS received from third parties via IRP reports. (*Id.*, ¶ 8.)

15.     For example, the IRP reports indicate that Goodman maintained accounts with Bellco Credit Union, Burke Christiansen (an investment management company), and Norwest Bank, among others. (*Id.*; *see also* dockets #48-15 and #48-16).

16.   Goodman's current account balances due for the tax years 1997, 1998, 1999, and 2000, calculated through January 31, 2012, are as follows:

| Type of Tax | Assessed Total (including assessed interest and penalties) | Balance Due (including accruals, less payments or credits) |
| --- | --- | --- |
| 1040 for 1997 | $220,395.84 | $343,873.04 |
| 1040 for 1998 | $145,272.80 | $226,668.43 |
| 1040 for 1999 | $316,922.50 | $484,340.19 |
| 1040 for 2000 | $210,887.92 | $320,181.03 |

(Wray Declaration, ¶ 9.)  These assessments total $1,375,062.69 and include penalties for failure to file and failure to pay tax pursuant to 26 U.S.C. § 6651.  (*See* docket #48-17.)

17.   Ms. Wray's review of IRS records revealed that Goodman made no timely administrative challenge to the notices of deficiency herein described.  (Wray Declaration, ¶ 14).

18.   Laurence Goodman is the record owner of the property at 299 Bear Drive, Golden, Colorado, which is the subject of this suit.  (Wray Declaration, ¶ 11; *see also* docket #48-18.)

19.   The IRS recorded a notice of federal tax lien ("NFTL") against Goodman with the County Recorder for Gilpin County on July 27, 2009.  (Docket #48-19.)

20.   The recorded NFTL includes the following lien information:

| Name | County | Form | Period Date | Recorded Amount |
| --- | --- | --- | --- | --- |
| Laurence Goodman | Gilpin | 1040 | 12/31/1997-07/27/2009 | $220,329.84 |
| Laurence Goodman | Gilpin | 1040 | 12/31/1998-07/27/2009 | $145,272.80 |
| Laurence Goodman | Gilpin | 1040 | 12/31/1999-07/27/2009 | $316,922.50 |
| Laurence Goodman | Gilpin | 1040 | 12/31/2000-07/27/2009 | $210,887.92 |

(*Id.*)

21.   The IRS obtained a copy of a participant sign-in sheet for the Rocky Mountain Inventors and

Entrepreneurs Congress dated February 25, 1999. (Wray Declaration, ¶ 13.)

22.     Defendant Goodman's signature and address appears on the Rocky Mountain Inventors and Entrepreneurs Congress sign-in sheet at line 9. (*See* docket #48-20.)

23.     Goodman applied for and received a United States patent for a chemical process in 1993. (Docket #48-6.)

## II.     Procedural History

On February 2, 2011, the United States initiated this action pursuant to 26 U.S.C. §§ 7401, 7402 and 7403(a). (Docket #1.) The United States alleges that during the years 1997, 1998, 1999 and 2000, Goodman did not fully pay his federal income taxes. (Docket #1 at ¶14.) As a result, a delegate of the Secretary of Treasury made assessments against Goodman for unpaid federal income taxes, penalties, interest and other statutory additions. (*Id*. at ¶12.) According to the United States, the total unpaid balance of the assessments is $1,327,761.31. (*Id*. at ¶14.) The United States seeks a judgment against Goodman for this amount, plus interest and statutory additions provided by law from January 31, 2011, less any credits for any payments toward the unpaid tax liabilities.

Goodman owns real property located on Bear Drive in Golden, Colorado (the "Property"), which is located in Gilpin County, Colorado. (*Id*. at ¶10.) In its Complaint, the United States alleges that the tax assessments against Goodman for tax years 1997, 1998, 1999 and 2000 create statutory liens in favor of the United States, and that the liens attach to all of Goodman's property rights. (*Id*. at ¶¶12, 16.) The United States seeks a declaration that it has valid and subsisting federal tax liens on all property and rights to property of Goodman. (*Id.* at 6.) The United States also seeks an order that the tax liens be foreclosed, that the Property be sold and proceeds from such sale distributed, and that a deficiency judgment enter if the proceeds do not satisfy the tax liens. (*Id*.

at 6-7.) The United States names the County of Gilpin, Colorado, the Colorado Department of Revenue, Patrick Maxwell, and Jan Ingebringsten as defendants as necessary parties pursuant to 26 U.S.C. § 7403, because they may have an interest in the Property.[2] (*Id*. at ¶¶6-10.)

On April 29, 2011, Goodman filed an answer and counter complaint. (Docket #13.) On June 10, 2011, the United States filed a motion to dismiss the counter complaint arguing: (1) the District Court lacks subject matter jurisdiction because the United States has not waived its sovereign immunity; and (2) the counter complaint fails to state a claim upon which relief may be granted. (Docket #21.) On January 4, 2012, this Court recommended that the United States' motion be granted, and on February 15, 2012, the District Court affirmed the recommendation dismissing Goodman's counterclaims. (Dockets #44 and #54.)

Meanwhile, on January 25, 2012, the United States filed the present motion seeking judgment against Goodman in the amount of $1,375,062.69 plus interest and penalties, and an order that the United States' federal tax liens be foreclosed upon the subject property. Goodman timely responded to the motion and, shortly thereafter, filed his own motion for summary judgment on February 13, 2012 seeking judgment in his favor and granting his counterclaims. The United States responded by moving to strike Goodman's summary judgment motion as untimely. All reply briefs have been timely filed.

## LEGAL STANDARDS

**I.    Fed. R. Civ. P. 56**

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v.*

---

[2]On April 29, 2011, the District Court issued an order dismissing all claims against the County of Gilpin, Patrick Maxwell and Jan Ingebrigsten, but keeping the names of these Defendants in the caption until entry of the Final Judgment. Docket #14.

*South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of

Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.     Treatment of a Pro Se Litigant's Pleadings

While a federal court must construe a *pro se* litigant's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers" (*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted)), it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## **ANALYSIS**

The United States argues that summary judgment is proper for its first claim against Goodman to reduce to judgment several unpaid federal tax assessments in the amount of $1,375,062.69, plus interest and penalties, and for its second claim against Goodman for foreclosure of related federal tax liens against Goodman's real property at 299 Bear Drive, Golden, Colorado. The Court will address each claim in turn.

## I.     Judgment for Federal Tax Assessments

For purposes of summary judgment, the initial burden is on the United States to show the validity of the tax assessments against Goodman:

> In a suit brought by the government to collect taxes resulting from unreported income, the government generally establishes a prima facie case when it shows a timely assessment of the tax due, supported by a minimal evidentiary foundation, at which point a presumption of correctness arises. A presumption of correctness

>attaches to the Commissioner's assessment, once some substantive evidence is introduced demonstrating that the taxpayer received unreported income.

*United States v. McMullin,* 948 F.2d 1188, 1192 (10th Cir. 1991) (citation omitted) (emphasis added). The United States' evidentiary foundation "may consist of evidence linking the taxpayer with an income-producing activity such that it can be inferred that the taxpayer received income from the activity, or it may consist of evidence showing an ownership interest in assets possessed by the taxpayer." *United States v. Nipper*, 3 F. App'x 882, 883-84 (10th Cir. 2001) (concluding that the government failed to present the required minimal evidentiary foundation).

In this case, the United States has produced IRS Forms 4340 ("Certificate of Assessments, Payments, and Other Specified Matters") for the 1997-2000 tax assessments against Goodman. (*See* docket #48-2.) This documentation shows that Goodman is indebted to the United States for unpaid assessed balances of tax, penalties, and interest. (*Id.*) Additionally, the Notices of Deficiency and attached Explanations of Adjustments documents provide an explanation of the bases for the assessments shown on the Forms 4340. (*See* dockets #48-8, #48-9, #48-10, #48-11.)

Forms 4340, signed and sealed by an authorized delegate of the Secretary of the Treasury, carry a presumption of correctness and are routinely used to prove that a tax assessment has been made. *See March v. IRS*, 335 F.3d 1186, 1188 (10th Cir. 2003); *see also Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992). Forms 4340 are admissible into evidence as self-authenticating official records of the United States. *See* Fed. R. Evid. 803(8) and 902(1). The "23C" entries on the Forms 4340 show that the taxes at issue were duly assessed and recorded. *See March*, 335 F.3d at 1188; *see also United States v. Chila*, 871 F.2d 1015, 1017-18 (11th Cir. 1989). The "notice" entries on the Forms 4340 constitute proof that adequate notice and demand was made. *See Chila,* 871 F.2d at 1019.

In addition, the United States has presented evidence that Goodman received income from securities and banking activity that he failed to report. (Dockets #48-15 and #48-16.) Specifically, the tax assessments are primarily based upon reports by Burke, Christensen & Lewis Securities, Inc., Financial Federal Trust & Savings, Bellco First Federal Credit Union, and Norwest Bank Colorado, N.A. of income received by Goodman for the subject years. (*Id.*; *see also* dockets #48-8, #48-9, #48-10, #48-11.)

Further, there is evidence that Goodman is the holder of a 1993 patent for a "method and apparatus for increasing flotation cell recovery and grade of complex copper-containing ores," and that he attended the Rocky Mountain Inventors and Entrepreneurs Congress on February 25, 1999. In Goodman's deposition, the United States attempted to ask Goodman (in addition to several other questions) about the February 25, 1999 document, about his employment history, about his investments, and about his patent, but Goodman refused to answer stating only, "The Fifth Amendment does not apply to me. It is a restriction on government" and "I choose not to be compelled to be a witness against myself." (*See* Deposition of Laurence R. Goodman, December 13, 2011 ("Goodman Depo."), docket #71.)[3] Notwithstanding Goodman's refusal to answer questions seeking information regarding his income, the Court finds that the United States has presented a minimal evidentiary foundation necessary to trigger the presumption of correctness.

---

[3]Although referred to repeatedly in the United States' motion, a copy of the deposition transcript was not attached as an exhibit on the record. Accordingly, the Court ordered that the United States provide a copy of the deposition and granted Goodman leave to respond to the exhibit and to any argument proffered by the United States that is supported by the exhibit. Docket #70. Goodman filed a response on June 6, 2012 accusing the United States' attorney of failing to send out complete documents as certified and falsifying the certificate of mailing. Docket #72. The Court finds the United States' failure to attach the deposition transcript, marked "Exhibit 6" as referenced in the motion, to be inadvertent and rejects Goodman's argument.

11

"This presumption will permit judgment in the [United States'] favor unless the opposing party produces substantial evidence overcoming it." *McMullin*, 948 F.2d at 1192. Goodman counters that the United States has filed "false documents" in this case and attempts to "perpetrate a fraud" on this Court by arguing that investment accounts are the same as bank accounts. Further, Goodman contends that he received no taxable income from his investments, and that any taxes on his investment accounts would have been paid by the investment company, Burke, Christiansen & Lewis. In addition, Goodman argues that the United States provides insufficient evidence of any taxable income, including no canceled checks or bank statements, and states that the United States has failed to show any income derived from Goodman's patent. Goodman also objects to the testimony of Ginger Wray as "her only knowledge of the facts in this case is from 'reviewing' self-created self-serving IRS documents." Finally, Goodman claims that the United States' "real purpose" in bringing this civil action is "to deprive and force [Goodman] to surrender his unalienable right not to be compelled to be a witness against himself under civil rules." (Response, ¶ 8, docket #51.)

First, there is no "fraud" by the United States in this case. The varied dates for filing notices of federal tax liens are easily explained by the United States concerning the "confusion" surrounding Goodman's address in Golden, Colorado. As for the bank and investment accounts, the IRP reports from third parties clearly reflect income to the "payee" – here, Goodman – on forms characterized as 1099-DIV for dividend payments, 1099-INT for interest payments, and 1099-B for "stock & bond" proceeds.[4] (*See* dockets #48-15 and #48-16.) Certainly, the IRS is authorized to assess taxes on such income. *See United States v. Cutler*, 948 F.2d 691, 692 (10th Cir. 1991) (noting that

---

[4]The title of an IRS 1099-B form is "Proceeds from Broker and Barter Exchange Transactions."

12

brokerage firms are required to prepare and file 1099-B forms with the IRS). Goodman provides no evidence, other than his own statements, that a payor of investment proceeds is responsible for paying taxes on such proceeds.

Likewise, Goodman provides no support for his argument that the IRS must produce copies of canceled checks or bank statements to demonstrate Goodman's income for the subject tax years. Generally, the proceeds from the sale of stocks or bonds are taxable as income (*see Miles v. Safe Deposit & Trust Co.*, 259 U.S. 247, 253 (1922)), and IRP reports are sufficient to demonstrate an individual's income received. *See DeVries v. C.I.R.*, 102 T.C.M. (CCH) 125, T.C.M. 2011-185, 2011 WL 3418248, at *9 (U.S. Tax Aug. 4, 2011) (if a taxpayer provides no records, the government may reconstruct income on indirect evidence, including IRPs). Goodman provides no evidence rebutting the information reported by third parties and relied upon by the United States.

Goodman's contention that Ms. Wray's testimony is somehow improper is not persuasive. Pursuant to Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." Goodman's primary objection is that Ms. Wray's knowledge stems "from 'reviewing' self-created self-serving IRS documents."

Ginger L. Wray declares that she is a "duly commissioned Revenue Officer with the Internal Revenue Service ("IRS") employed in the Small Business/Self-Employed Division," who works in Lakewood, Colorado. (Wray Declaration, ¶ 1, docket #48-7.) Ms. Wray provides litigation support for U.S. attorneys including "researching and computing current outstanding balances of liabilities owed by taxpayers involved in litigation." (*Id.*, ¶ 2.) Ms. Wray states that the purpose of her review

13

of IRS files concerning Goodman was "to determine that tax was assessed against Laurence Goodman, to determine whether notice and demand for payment of those liabilities were made and to ascertain the outstanding unpaid liabilities owed by Laurence Goodman." (*Id.*, ¶ 3.) The remainder of her testimony, including that noted above, concerns assessments and notifications made, liens imposed, and taxes (plus penalties and interest) computed based primarily upon reports made by third parties. The Court rejects Goodman's contention and finds that Ms. Wray's testimony falls squarely within the parameters of Rule 56(c)(4).

Finally, Goodman claims that the United States' "real purpose" in bringing this civil action is "to deprive and force" Goodman to surrender his right not to be compelled to be a witness against himself. The Court assumes Goodman refers to his Fifth Amendment right to refrain from providing answers to official questions which may incriminate him in future criminal proceedings. *See Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Such right means that a civil litigant may use the Fifth Amendment legitimately to avoid having to answer questions during any phase of the discovery process. *See* 8 Charles A. Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice & Procedure* § 2018, at 273 (2d ed. 1994) ("[C]ourts have repeatedly held that the privilege against self-incrimination justifie[s] a person in refusing to answer questions at a deposition, or to respond to interrogatories, or requests for admissions, or to produce documents.").

The Court is not persuaded that any "constitutional deprivation" is sufficient to overcome summary judgment here. First, there is no indication that Goodman has been "forced" in this litigation to testify against himself. Second, the United States' only burden for purposes of this motion is to establish a prima facie case by showing a timely assessment of the tax due, supported by a minimal evidentiary foundation, at which point a presumption of correctness arises. The Court

has already found that the United States has met its burden. Goodman's baseless supposition that the United States seeks to deprive him of his Fifth Amendment right does not constitute substantial evidence sufficient to overcome the presumption in favor of the United States.

Accordingly, this Court respectfully recommends that the District Court enter summary judgment in favor of the United States for its first claim seeking validation of the tax assessments described herein against Goodman.

## II.     Foreclosure of Federal Tax Liens

To prevail on summary judgment, the United States must demonstrate that (1) a valid federal tax lien exists, and (2) Goodman retains an interest in the real property to which the lien is attached. *E.g., United States v. D'Andrea*, No. 09-cv-01940-PAB-MJW, 2010 WL 3842807, at *8-*9 (D. Colo. Aug. 31, 2010); *United States v. Kalevik*, No. 03-cv-00411-CBS-BNB, 2007 WL 1891644, at *9 (D. Colo. June 29, 2007). The Court addresses each requirement in turn.

### A.     <u>Valid Federal Tax Lien</u>

The responsibility of every citizen to pay taxes is well-settled. *See, e.g., Helvering v. Mitchell*, 303 U.S. 391, 399 (1938). "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Any lien imposed pursuant to Section 6321 arises "at the time the assessment is made" and continues until the judgment is satisfied. 26 U.S.C. § 6322. Once a Section 6321 lien attaches, the judgment may be satisfied by selling property owned by the delinquent tax payer. 26 U.S.C. § 7403. The statutory scheme further contemplates the lawful effect

of a lien imposed by Section 6321 even without filing notice of the lien. 26 U.S.C. § 6323.

Here, the validity of Goodman's tax liability underlying the lien is firmly established. As set forth above, various third parties reported income to Goodman for the tax years 1997, 1998, 1999, and 2000. It is undisputed that Goodman filed no tax returns and paid no taxes on this income. Goodman was notified of deficiencies in 2000 for tax years 1997 and 1998, and in 2003 for tax years 1999 and 2000, yet did not respond. The United States made assessments of the taxes, penalties, interest and additions, and filed a notice of federal tax lien on July 27, 2009 in Gilpin County. Pursuant to 26 U.S.C. § 6322, the liens upon all of Goodman's property and rights to property arose at the time the tax assessments were made and will continue through the satisfaction of the final judgment.

The burden now shifts to Goodman to refute the facts presented by the United States in light of the law stated above. *Celotex*, 477 U.S. at 324. The Court has addressed Goodman's challenges to the United States' arguments above. Nothing in the record presently before the Court counters the United States' evidence supporting the validity of the federal tax lien attached to the subject property. Goodman fails to meet his burden of showing that a genuine issue of material fact remains as to the validity of the lien. The Court thus finds that a valid federal tax lien attached to the subject property exists.

      B.      Taxpayer Retains an Interest

A valid tax lien attaches to any property owned by the taxpayer at the time the tax-deficiency assessment is made. 26 U.S.C. §§ 6321, 6322. The United States asserts that Goodman is the effective owner of the property at 299 Bear Drive, Golden Colorado, and provides a copy of a June 26, 1978 Deed of Trust conveying the property to Goodman. (*See* docket #48-18.) Goodman

further testified that he currently lives at that address, (Goodman depo., 12: 17-19, docket #71), but when asked about the Deed of Trust, Goodman refused to answer (*id.*, 21: 10-16). As set forth above, the United States filed a Notice of Federal Tax Lien ("NFTL") against the subject property dated July 27, 2009. Goodman does not contest that he currently owns and resides at the property, nor does he contest that he held ownership of the property at the time of the tax assessments. As such, the Court finds that Goodman retains an interest in the property at 299 Bear Drive, Golden, Colorado.

The burden now shifts to Goodman to refute such a finding. *Celotex*, 477 U.S. at 324. However, Goodman submits no evidence rebutting a finding that he has an interest in the subject property. The Court thus finds that Goodman retains an interest in the real property at 299 Bear Drive, Golden, Colorado to which the lien is attached.

Considering all of the above, the Court determines that the United States has demonstrated the elements necessary for it to prevail on summary judgment as to whether foreclosure of the federal tax liens against Goodman is proper. Accordingly, this Court respectfully recommends that the District Court enter summary judgment in favor of the United States and against Defendant Goodman in the amount of $1,375,062.69, plus any penalties and interest accruing under the applicable law, and order that the federal tax liens be foreclosed upon the property at 299 Bear Drive, Golden, Colorado.

## **GOODMAN'S MOTION FOR SUMMARY JUDGMENT AND UNITED STATES' MOTION TO STRIKE**

As set forth above, Goodman filed a motion for summary judgment at the same time he filed a response to the United States' motion for summary judgment on February 13, 2012. Thereafter, the United States filed a motion to strike Goodman's dispositive motion as untimely. Because it is

possible that the motion to strike may dispose of Goodman's motion, the Court will begin with an analysis of the United States' motion.

On November 10, 2011, this Court granted the United States' motion for extension of the deadlines set in this case pursuant to the May 10, 2011 Scheduling Order. (Docket #38.) Specifically, the Court extended the discovery cutoff to December 30, 2011 and the dispositive motions deadline to January 30, 2012. (*Id.*) Goodman did not object to the extension of these deadlines.

The United States filed its dispositive motion on January 25, 2012, within the deadline set by the Court. However, Goodman filed his dispositive motion two weeks after the deadline, and has never sought permission nor requested an extension of time within which to do so. Goodman's only response to the motion to strike is to re-assert his argument that he never received the income attributed him in this case and to accuse officers of the United States and this Court of "piracy and conspiracy."

Clearly, Goodman failed to comply with this Court's order setting deadlines by filing his motion for summary judgment out of time and making no effort to seek leave to do so, and the Court would be justified in striking the motion as untimely. *See Merrill Scott & Assocs., Ltd. v. Concilium Ins. Servs.*, 253 F. App'x 756, 763 (10th Cir. November 2, 2007) (unpublished) (affirming district court's decision to strike *pro se* litigant's motion for summary judgment as untimely); *see also Lewis v. Four B Corp.*, 347 F. Supp. 2d 1017, 1020 (D. Kan. 2004) (denying *pro se* plaintiff's cross-motion for summary judgment as untimely).

Furthermore, Goodman filed a motion in this case on October 17, 2011, which was converted

by this Court to a motion for summary judgment on December 13, 2011.[5] In the briefing on the October 17 motion, Goodman made the same or similar arguments he makes in the present dispositive motion and in the briefing on the United States' dispositive motion. (*Compare* dockets #51 and #52 *with* dockets #32 and #35.) Goodman provides no authority, and the Court has found none, granting him leave to file two dispositive motions in the same litigation proffering the same or similar arguments. Therefore, the Court recommends that Goodman's motion for summary judgment be stricken.

Alternatively, this Court recommends that Goodman's motion be denied for failure to demonstrate there are no genuine issues of material fact supporting the invalidity of the United States' claims and justifying judgment in his favor. Goodman's primary argument, which is not supported by admissible evidence,[6] is that the income reported by Burke, Christensen & Lewis was not distributed to him. As set forth above, the Court has already determined the validity of the United States' tax assessments against Goodman. Further, any arguments concerning the legitimacy of the United States government or the IRS as a federal agency have been addressed by the Tenth Circuit and found to be "completely lacking in merit and patently frivolous." *See Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990).

## **CONCLUSION**

---

[5] This Court's recommendation to deny Goodman's motion remains pending before the District Court. (Docket #48.)

[6] Goodman provides only copies of the IPR reports containing a typed "Note" that states "not distributed to Laurence R. Goodman" and an arrow pointing to the monetary amount. (*See* Motion, docket #52 at 16-46.) Although he does provide a declaration, the only testimony contained therein are Goodman's affirmations that he received documents from the United States. (*Id.* at 48-49.)

The United States has shown that no genuine issues of material fact exist concerning the validity of tax assessments against Goodman and the propriety of foreclosure of related tax liens against Goodman's real property. On the other hand, Goodman has failed to meet his burden to rebut any presumptions in favor of the United States. Moreover, Goodman filed a second motion for summary judgment, asserting the same or similar arguments, out of time and without leave of the Court. Accordingly, the Court respectfully RECOMMENDS that the United States' Motion for Summary Judgment [filed January 25, 2012; docket #48] and the United States' Motion to Strike Untimely Motion [filed February 23, 2012; docket #57] be **granted**, and Goodman's Motion for Summary Judgment [filed February 13, 2012; docket #52] be **stricken** as untimely and improper or, in the alternative, **denied**.

Dated at Denver, Colorado, this 12th day of June, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge